**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Angel C.,

Petitioner,

v.

Todd Blanche, *Attorney General*; Markwayne Mullin, *Secretary of Homeland Security*; David Venturella, *Acting Director of U.S. Immigration & Customs Enforcement*; Marcos Charles, *Acting Executive Associate Director for Enforcement and Removal Operations*; U.S. Immigration & Customs Enforcement; U.S. Department of Homeland Security; David Easterwood, *Field Office Director for Enforcement and Removal Operations*; and Joel Brott, *Sherburne County Sheriff*,

Respondents.

File No. 26-CV-4098 (JMB/EMB)

**ORDER**

---

Evangeline Surya Ester Dhawan-Maloney, Minneapolis, MN, for Petitioner Angel C.

Carl Berry, United States Attorney's Office, Minneapolis, MN; and David W. Fuller, United States Attorney's Office, Minneapolis, MN for Respondents Todd Blanche, Markwayne Mullin, David Venturella, Marcos Charles, U.S. Immigration & Customs Enforcement; U.S. Department of Homeland Security; David Easterwood, and Joel Brott.

---

This matter is before the Court on Petitioner Angel C.'s[1] Petition for Writ of Habeas

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in immigration cases.

Corpus (Petition) under 28 U.S.C. § 2241 (Doc. No. 1 [hereinafter, "Pet."]), which names Todd Blanche, Markwayne Mullin, David Venturella, Marcos Charles, U.S. Immigration and Customs Enforcement (ICE), U.S. Department of Homeland Security (DHS), David Easterwood, and Joel Brott (together, the Respondents) (Pet.) For the reasons explained below, the Court grants the Petition.

**FINDINGS OF FACT**

1. Angel C. is a citizen of Mexico who arrived in the United States in 2014 on a B-2 visa. (Pet. ¶ 1; Doc. No. 8 at 1.) Angel C. lived in Minnesota before moving to Hudson, Wisconsin in 2022[2] where he currently resides with his mother and father. (*Id.* ¶¶ 1, 19.)

2. Angel C. does not have a criminal record and there is no pending order of removal against him. (*Id.* ¶ 22.) He also has his own construction company that he has owned for the past six years. (*Id.* ¶ 2.)

3. On September 13, 2026, while "working fugitive operations on Crest View Drive in Hudson, Wisconsin," ICE agents observed a vehicle with a Minnesota license plate pass their location. (Doc. No. 9-1 at 2.) These officers then followed the vehicle as it drove from Hudson, Wisconsin, to Saint Paul, where at some point, they determined that it was safe to conduct a vehicle stop. (*Id.* ("Officers followed the Silverado until a safe

[2] Hudson, Wisconsin is a city that borders Minnesota and is less than a thirty-minute drive from Saint Paul.

location was present for a vehicle stop.”).)[3]

4. Angel C. was in the passenger seat while his father was the driver. (Pet. ¶ 23.)[4] At some point between 7:00 and 8:00 a.m., their car was surrounded by unmarked vehicles. (*Id.*; Doc. No. 9-1.) Unidentified, masked ICE agents asked Angel C. about his immigration status and asked for identification from both Angel C. and his father. (Pet. ¶ 23.) Angel C. provided a government-issued instructional drivers’ identification card and provided his name when asked. (Doc. No. 9-1 at 2.) A warrant had not been issued at the time Angel C. was stopped by ICE agents. (Pet. ¶ 24.)

5. ICE officers took Angel C. into custody and transported him to the Whipple Building and then to Sherburne County Jail, where he remains detained. (*Id.* ¶¶ 23–26.)

6. On September 22, 2026, Angel C. filed this Petition. (*See* Pet.) On September 23, 2026, the Court ordered Respondents, among other things, to respond to the Petition on or before 11:00 a.m. on September 25, 2026. (Doc. No. 5.)

7. On September 23, 2026, Angel C. filed an Amended Petition (Doc. No. 7),[5]

[3] The Court is skeptical that officers had no safe opportunity to conduct a traffic stop of the vehicle as it travelled from Hudson, Wisconsin, to Saint Paul, Minnesota, especially given the possible routes, which include travel along interstate highways and residential streets, which under normal conditions, would have presented ample safe opportunities to conduct a traffic stop. Nevertheless, the Court credits the portion of the exhibit that explains that officers followed the vehicle from Hudson to Saint Paul before initiating a traffic stop.

[4] The Petition is misnumbered starting on page 5. Petitioner duplicates numbers 23 and 24 instead of going to 25. To avoid confusion, the Court will use the numbered paragraphs as is written but will identify the duplicate set as follows: 23(2) and 24(2).

[5] The Amended Petition is virtually identical to the original Petition only that this version does not include Petitioner’s attorney’s comments in the margins.

and on September 25, 2026, Respondents filed a response to the Petition. (Doc. No. 8.)[6]

## DISCUSSION

Angel C. seeks immediate release, arguing that Respondents violated the warrantless arrest requirements of 8 U.S.C. § 1357(a)(2), the provisions of 8 C.F.R. 236.1, and the Fifth Amendment. For their part, Respondents argue that habeas relief is unavailable to Angel C. because he has not requested a bond hearing in immigration court and that the warrantless arrest was justified. The Court disagrees and concludes that, on this record, the warrantless arrest was invalid.

### A. Right to Habeas Relief

A writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States" (citing U.S. Const., Art. I, § 9, cl. 2)). For most of the nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Hamdi*, 542 U.S. at 525

[6] Respondents attached a Declaration of Deportation Officer Langworthy (Doc. No. 9), who may have been one of the arresting officers. (*See* Doc. No. 9-1 at 2 (listing "Deportation Officer (SDDO) Langworthy" as one of the officers involved in the traffic stop).) Surprisingly, the Declaration itself is completely devoid of any factual statements concerning or even acknowledging Langworthy's involvement in Angel C.'s warrantless arrest. There is no mention of any observations made, subjective beliefs, or rationale in the Declaration. Nevertheless, Respondents were provided with sufficient opportunity to present evidence, including by sworn declaration, to support their arguments, and the Court must decide the Petition based on the limited record presented.

(quotation omitted). The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus "extends to . . . immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citation omitted). The petitioner bears the burden of proving that his detention is illegal by a preponderance of evidence. *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025).

**B. Availability of Habeas Relief**

Respondents argue that because Angel C. is detained under § 1226(a), he must first request a bond hearing before bringing a habeas petition. (Doc. No. 8 at 2.) However, Respondents do not cite any authority for this specific proposition, and several courts in this district have reached a different conclusion, holding that "there is no statutory requirement that a habeas petitioner exhaust his administrative remedies before challenging his immigration detention in federal court." *Soulemaine C. v. Blanche et al.*, No. 26-CV-2215 (LMP/JFD), 2026 WL 1180075, at *2 (D. Minn. 2026); *see also Eliseo A.A. v. Olson*, 811 F. Supp. 3d 1021, 1032 (D. Minn. 2025) (same); *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d. 957, 965–66 (D. Minn. 2025) (citation omitted) ("The exhaustion requirement for § 2241 petitions is judicially created, not statutorily mandated, so when considering it, 'sound judicial discretion governs.'"); *Kurt D. v. Blanche et al.,* No. 26-CV-3320 (JWB/DJF), 2026 WL 2794179, at *4 (D. Minn. 2026) ("Requiring [Petitioner] to wait in detention for an undetermined amount of time for an unclear result from the BIA is counter to due process."); *Sorelys C.R.O. v. Blanche*, No. 26-CV-3859 (ECT/LIB), 2026 WL 266567, at *2 (D. Minn. 2026) ("[A] habeas petitioner in removal proceedings may challenge an unlawful arrest, and release is the appropriate remedy."). The Court follows

these persuasive and considers the Petition even though Angel C. has not yet received a bond hearing in immigration court.

### C. Warrantless Arrest

Turning to the merits, the Court concludes that the record presented cannot establish the requirements for a valid warrantless arrest, and therefore, the Court grants the Petition.

The parties agree that Angel C. is being detained pursuant to 8 U.S.C. § 1226(a) (Doc. No. 8 at 10), which requires a warrant. 8 U.S.C. § 1226(a); *see also Ahmed M. v. Bondi*, No. 25-CV-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026) ("Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a)." (quotation omitted)). An exception to this warrant requirement exists if there is probable cause "to believe that the [noncitizen] so arrested is [1] in violation of any[] law or regulation [made in pursuance of law regulating the admission, exclusion, expulsion, or removal of noncitizens] and [2] is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); *see also* 8 C.F.R. § 287.8 (c)(2)(ii) (stating that a warrant of arrest "shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained"); *U.S. v. Diaz-Quintana,* 623 F.3d 1237, 1239 (8th Cir. 2010) (concluding that the phrase "reason to believe" in section 1357(a)(2) means "constitutionally required probable cause"). The parties dispute only the second statutory requirement, whether there was probable cause to believe Angel C. was "likely to escape."

The Court concludes that the record presented does not establish probable cause to believe that Angel C. was likely to escape for two separate reasons. First, contrary to

Respondents' argument, *Quintana* does not stand for a per se rule that any noncitizen who the officer believes is removable and who is subject to a valid traffic stop[7] is necessarily likely to escape. Such a rule renders meaningless the second statutory requirement and to the extent that it would justify arrest of all removable noncitizens, it would also violate constitutional due process. *See, e.g.*, *Quintana*, 623 F.3d at 1239.

Second, the record presented here shows that Angel C. was not likely to escape. Angel C. provided the officers with his true identity, cooperated fully with the officers, provided officers with identification documents in his possession that corroborated his identity, and had no criminal record. (Pet. ¶¶ 23–25; Doc. No. 9-1 at 2.) Importantly, Angel C. was not the driver of the vehicle, and there is no information in the record to suggest that the driver, Angel C.'s father, committed any traffic offense or other violation prior to the traffic stop. Instead, the Form I-213 states only that the officer noticed a vehicle and ran the plates.[8] (Doc. No. 9-1 at 2.) These facts support the conclusion that Angel C.

[7] Petitioner makes no argument that the arresting officers lacked the reasonable suspicion of a traffic-related or criminal offense necessary to justify a traffic stop. Given the Court's decision to grant the Petition, however, it need not determine whether the traffic as valid or whether arresting officers violated the Constitution when they initiated the traffic stop.

[8] Both the response from Respondents and the Form I-213 emphasize that Angel C. was likely to escape because he was in a vehicle with keys in the ignition and was traveling in Minnesota despite living in Wisconsin However, Respondents cite to no legal authority—and the Court is aware of none—for the proposition that leaving keys in the ignition during a traffic stop and living less than thirty minutes' drive from the location of the traffic stop provides any indication whatsoever about the passenger's likelihood of escape. Moreover, the argument is disingenuous given that the officers followed the vehicle from Hudson, Wisconsin to Saint Paul. The statement that the driver and Angel C. lived in Hudson was consistent with the arresting officers' own observations, defeating any inference of deception that Respondents make and further decreasing the likelihood of escape.

presented no risk or likelihood of escape. In addition, these facts are also readily distinguishable from those in *Quintana*. In that case, the petitioner was suspected of a criminal drug-trafficking offense, was the driver of a vehicle in North Dakota that had a Washington State license plate, had no verifiable identification documents in his possession, was stopped for speeding (88 miles per hour in a 75 miles per hour zone), and agents were unable to locate any records for the name provided by the driver. *Quintana*, 623 F.3d at 1238–39, 1240–41. None of those important facts are present here, and the Court concludes that arresting officers in this case had no reason—much less probable cause—to think that Angel C. was likely to escape.

Absent sufficient information in the record, the Court cannot reach the same result as in *Quintana*, and it is compelled to grant the Petition because the warrantless arrest was unlawful.[9] As a result, Angel C. is entitled to release. See *Pina C.D.B. v. Bondi*, No. 26-CV-1929 (KMM/DJF), 2026 WL 810676, at *3 (D. Minn. Mar. 24, 2026) (concluding

[9] Although the Court need not address the question of whether Angel C.'s detention without bond violates the Fifth Amendment, it nevertheless alternatively concludes that, on balance, the *Mathews v. Eldridge* due-process factors tip in Angel C.'s favor. Angel C. has a significant private interest at stake (i.e., his liberty, his detention in a carceral setting, his inability to earn a living, and his separation from his grandchildren); the risk of erroneous deprivation through incarceration is needlessly high when inexpensive procedures such as a bond hearing protect against erroneous deprivations of liberty and separation of families; and the federal government has very little interest in incarcerating individuals en masse who pose little or no risk of flight or danger to the community. Thus, Angel C.'s ongoing detention is also unlawful for this reason as well. *See, e.g.*, *R.M. v. Blanche*, No. 26-CV 2283 (LMP/DLM), 2026 WL 1506306 (D. Minn. May 29, 2026) (concluding that respondents' mandatory detention without bond under 8 U.S.C. § 1225(b)(2) and *Avila* violated petitioner's rights to procedural due process and ordering a bond hearing); *Jesus Alejandro G.A. v. Blanche*, No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138 (D. Minn. May 18, 2026) (same).

"immediate release is the proper remedy" for an arrest effected without a valid warrant); *see also Claudio A.A. v. Bondi*, No. 26-CV-742 (KMM/LIB), 2026 WL 468232, at *7 (D. Minn. Feb. 12, 2026) (concluding that failure to provide a warrant before arrest pursuant to section § 1226(a) is a violation of due process rights and collecting cases), *report and recommendation adopted*, No. 26-CV-742 (KMM/LIB), 2026 WL 478347 (D. Minn. Feb. 18, 2026).[10]

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the Petition (Doc. No. 1) is GRANTED as follows:

1. Respondents are ORDERED to release Petitioner Angel C. immediately, without conditions, and in any event no later than 4:00 p.m. CT on September 28, 2026.

2. On or before 11:00 a.m. CT on September 29, 2026, counsel for Respondents shall file a letter affirming that they have released Petitioner Angel C.

3. On or before 11:00 a.m. CT on September 29, 2026, counsel for Respondents shall also file a declaration pursuant to 28 U.S.C. § 1746 by an individual with personal knowledge that states when and where the Petitioner was released, attaches any and all documentation concerning the Petitioner's release, and affirms with supporting documentation that all property of Petitioner was returned to Petitioner upon release (or, if property is retained, state which property is retained, the legal basis for its retention, and affirm that Respondents duly provided Petitioner with certified copies of any and all immigration-related documentation). Respondents must submit each of the following three forms to affirm return of Petitioner's property: I-77, I-

[10] Respondents also assert that 8 C.F.R. § 287.3 permits a warrantless arrest in this case. (Doc. No. 8 at 12–13.) 8 C.F.R. § 287.3, however, does not apply. That regulation only applies to noncitizens arrested "under the authority contained in section 287(a)(2)." Section 287(a)(2) is limited to arrests that occur within "100 air miles from any external boundary of the United States." Because section 287(a)(2) does not apply, Respondents' argument based on section 287.3 has no merit.

216, and G-589. If Petitioner's property is lost, Respondents must also submit form I-387, "Report of Detainee's Missing Property." If Respondents cannot provide one or more of these forms, Respondents must address why they are unable to do so.

4. Petitioner Angel C. may move separately within 30 days of final judgment in this action to recover attorney's fees and costs under the Equal Access to Justice Act, 20 U.S.C. § 2412(d).

5. To the extent Petitioner Angel C. seeks additional relief, the Petition is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 28, 2026

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court